Mr. and Mrs. Robert Harwig, et al., Plaintiffs-Appellants, v. Village of Hickory Hills, a Municipal Corporation, Anthony Mase, Building Commissioner of Hickory Hills, Standard Bank and Trust Company, as Trustee Under Trust #1651, Defendants-Appellees, and Kroon Land Development Corporation, Defendant-Intervenor-Appellee.

Gen. No. 50,721.

First District, First Division.

June 27, 1966.

Schumacher, Gilmore, Staub & Payne, of Chicago (George W. Jones, of counsel), for appellants.

Vincent R. Ewald, of Chicago, for appellees, Village of Hickory Hills and Anthony Mase.

Haskins, Maguire & Haskins, of Chicago (Robert E. Haskins and C. W. Eckert, of counsel), for appellee, Kroon Land Development Corporation.

MR. JUSTICE BURMAN delivered the opinion of the court.

This action was brought by the owners of residences in the vicinity of a tract in Hickory Hills, Illinois, attacking an ordinance of that municipality rezoning the subject property to permit the construction of apartment buildings. The complaint sought a declaratory judgment

that the ordinance was void and unconstitutional, and requested injunctions preventing the building commissioner of Hickory Hills from issuing building permits for the construction of apartment buildings, and preventing the owner of the property from applying for such permits. Temporary injunctions were entered as requested, and the case proceeded to a trial on the merits. By its order of July 1, 1965, the trial court dismissed the suit, finding that the rezoning ordinance was, "valid and constitutional in all respects, and bears a real and substantial relation to the public health, safety, morals, comfort, convenience and general welfare of the People." Plaintiffs bring this appeal from that order.

The subject property, irregularly shaped and consisting of about five acres, is located on the north side of 95th Street, a four-lane arterial highway. Zoned "R–2" for many years to permit only single-family residences, the property remained unimproved with the exception of a single-family residence constructed on one portion. A wooded ravine traverses the rear portion of the property, giving that portion the appearance of a park.

To the east of the subject property, along the north side of 95th Street, are located a church and single-family dwellings, although the strip of property fronting on 95th Street is zoned primarily for business uses. The land located north of the subject property is zoned and used for single-family dwellings. It is within this area that the residences of the appellants are located. To the west of the subject property, along the north side of 95th Street, are located a single family-dwelling, apartment buildings, a restaurant, and a tavern. That property is zoned for multiple dwellings and for business uses. To the south of the subject property, across 95th Street, are located apartment buildings and an elementary school, which are within the village limits

391

of Hickory Hills, and a forest preserve and golf course which are outside those limits.

In June of 1964 the record owner of the property, the Standard Bank and Trust Company, as Trustee under Trust #1651, contracted to sell it to the Kroon Construction Company, contingent upon its rezoning from R–2 to R–4 to permit construction of apartment buildings. Kroon Construction Company assigned its interest in the contract of sale to the Kroon Land Development Company. A petition was filed requesting the zoning change and in due course, after extensive public hearings at which the plaintiffs were afforded an opportunity to be heard, the zoning of the subject property was changed to R–4 by an ordinance passed August 27, 1964. Plaintiffs filed this suit in October of 1964. In January of 1965, the Village passed a comprehensive zoning ordinance, which changed the designation of the zoning of the subject property to "R–5," but did not affect the existing restrictions upon its use.

Plaintiffs allege that the action of the village authorities in rezoning the subject property to permit the construction of apartments was arbitrary, a clear abuse of legislative discretion, and bore no substantial relation to the public health, safety, and welfare of the community; and that the trial court's order was based upon the erroneous conclusion that the reasonableness of the zoning ordinances was debatable.

The basic rules to be applied by Illinois courts in passing upon the validity of zoning ordinances have been well-defined in a long line of cases. They were summarized by our Supreme Court as follows in Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 176 NE2d 771:

> . . . we note the great bulk of cases reiterating the rules that a zoning ordinance is presumed valid; that the burden is upon the person attacking its

validity to establish by clear and affirmative evidence that it is arbitrary; that the courts should not overrule the decisions of municipal authorities where the reasonableness of the classification is debatable, and the action of the municipal authorities is not capricious; and that the validity of each zoning ordinance must be determined on its own facts and circumstances. (22 Ill2d at pp 401, 402.)

The court went on to list the following as relevant factors in determining the reasonableness of zoning ordinances: (1) the extent to which the value of the property is diminished by restrictions; (2) the extent to which the removal of the restriction would depreciate the value of other property in the area; (3) the reliance on existing zoning ordinances; (4) the suitability of the property for the zoned purpose; (5) the existing uses and zoning of nearby and surrounding property; and (6) the extent to which the ordinance promotes health, safety, morals or general welfare of the public. (22 Ill2d at page 402).

Plaintiff's first witness in this case was George H. Kranenberg, an expert planning and zoning consultant. He testified that in his opinion the highest and best use of the subject property, from a planning and zoning standpoint, would be achieved if the portion fronting on 95th Street, for a depth of 200 feet, were allowed to remain zoned R–5, while the balance of the property, which is further removed from 95th Street, were used for single-family dwelling units. He explained that while the portion fronting on 95th Street takes its character from the other property fronting on that street, the northern portion of the subject property derives its character from the single-family residential area into which it intrudes.

Joseph A. Nowicki, a professional real estate appraiser, testified on behalf of the plaintiffs that the construc-

393

tion of multiple-family dwellings on the subject property would cause a monetary loss in the value of the neighboring properties. He estimated that this loss would amount to $3,000 in the case of appellant Doyle, and lesser amounts in the cases of other residences. The appellants and the owners of four other residences near the subject property testified in their own behalf that their properties would depreciate by amounts ranging from $5,000 to $10,000.

Robert Kroon, a real estate developer and president of Kroon Construction Company, testified that defendant-intervenor plans first to remove the existing vacant dwelling from the subject property, and then to fill the ravine at a cost of $50,000 to $75,000 and proceed with the construction of 21 twelve-flat buildings. He testified that when he develops the subject property, he plans to improve 84th Court, which now dead-ends at the subject property, install a storm sewer and curb, and dedicate it to the city. He further testified that in his opinion there is a very definite need for apartments in the Hickory Hills area.

Hugh F. MacKinnon, a real estate broker and appraiser, testified on behalf of defendant-intervenor that the northern portion of the subject property would not be suitable for development for single-family residences because the cost of filling in the ravine would be prohibitive. John McNamara, a real estate broker, appraiser and builder, testified on behalf of the defendant-intervenor that the planned construction was, "an ideal setup," and an "asset to the area," and that it would be to the general welfare of the Village and of the balance of the community.

■ ■ After a careful review of the record, we are constrained to agree with the trial judge that the plaintiffs did not overcome by clear and convincing evidence the presumption of the validity of the duly enacted municipal ordinance; nor did they show that the ordinance

394

is unreasonable, arbitrary, or without substantial relation to the public health, safety, morals and welfare. Bennett v. City of Chicago, 24 Ill2d 270, 274, 181 NE 2d 96. Plaintiffs own expert, Kranenberg, testified that a portion of the subject property was properly rezoned for multiple dwellings. The testimony of the other experts raises a substantial question as to the economic feasibility of the use of the other portion for single-family dwellings, in view of the necessity of first filling in the ravine. As to the depreciatory effect of the proposed construction, plaintiffs' expert appraiser estimated the resultant decline in the values of plaintiffs' properties at a fraction of what plaintiffs themselves foresaw. There was testimony as to the need for apartments in Hickory Hills, and as to other benefits to the Village from the proposed development. Considering the record as a whole, we conclude that plaintiffs' evidence at best raised only a debatable question as to the reasonableness of the ordinance; and in such circumstances the decision is one for the legislative authorities, not for the courts. Liberty Nat. Bank of Chicago v. City of Chicago, 10 Ill2d 137, 139 NE2d 235; Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643.

Plaintiffs cite two cases in which the neighbors of tracts of property formerly zoned for residential uses successfully attacked ordinances reclassifying those tracts to permit other uses. In Treadway v. City of Rockford, 28 Ill2d 370, 192 NE2d 351, the Supreme Court struck down as unreasonable and capricious an ordinance rezoning property to permit the construction of a shopping center. But in that case, the proposed use was the insertion of a commercial development into an area which was residential in character for three blocks in all directions, and continuing to develop in that fashion. Furthermore, the court found that the subject property had a substantial value for residential purposes, and that no unusual problems would be encountered in

its development for that purpose. In the case at bar, we note that there are apartment buildings across the street and adjacent to the subject property; and that there are definite suggestions of problems in connection with the development of the property for single-family dwellings.

In Garner v. City of Carmi, 28 Ill2d 560, 192 NE2d 816, the neighbors of a tract rezoned from residential to commercial to permit the construction of a gas station successfully attacked the validity of the ordinance. The court cited the severe damage that would result to the value of the neighboring lots, and enumerated other detriments to the community from the proposed development. The court concluded that the ordinance constituted an unreasonable invasion of the property rights of the surrounding homeowners, who had purchased their properties in reliance upon the original zoning ordinance. In the case at bar, which involves the construction of apartments, not a gas station, we do not find clear and convincing evidence either of such effects upon the neighboring tracts or of other detriments to the community comparable to those found by the court in Garner.

On the basis of this record, we must hold that the finding of the trial judge, that the rezoning ordinance was reasonable and therefore valid, was not contrary to the manifest weight of the evidence. The judgment upholding the validity of the ordinance and dismissing the complaint is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.