(No. 37849.—)
STANDARD STATE BANK, Trustee, Appellee, *vs.* THE VIL-
LAGE OF OAK LAWN; Appellant.

*Opinion filed November 26, 1963.*

GERHARDT J. GLIEGE, of Oak Lawn, for appellant.

DOWD, KENNEDY & DOWD, of Chicago, (JOHN J. DOWD and GEORGE T. MURPHY, JR., of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant village of Oak Lawn appeals directly from an order of the circuit court of Cook County, entered in a declaratory judgment proceeding, holding the village zoning ordinance void insofar as it prevents erection by plaintiff of ten 2½-story apartment buildings, each containing six dwelling units, in an "A" residentially zoned area. The requisite certificate as to the involvement of the validity of the village ordinance and that the public interest requires a direct appeal is present.

The defendant here maintains that plaintiff failed to overcome the presumptive validity of the ordinance by clear and convincing proof of its arbitrariness; and that the zoning requirements bear a reasonable relationship to the legitimate objects of the police power. No question is raised as to the exhaustion of administrative remedies.

The evidence establishes the subject property to be a rectangularly shaped tract 264.7 feet east-west and 125 feet deep consisting of ten contiguous, vacant lots, all fronting upon 103rd Street and bounded on the west by Kilbourn

Avenue and on the east by Kenneth Avenue. These lots are separated from other lots in the block by a 20-foot alley running from Kenneth to Kilbourn along the south boundary of the property with which we are concerned. The present A-residential zoning permits single-family residences, limiting such structures and their accessory buildings to 35% of the lot area for an interior lot and 40% of a corner lot. The zoning limitations further require lot sizes of 6250 square feet and lot widths of 50 feet with building heights restricted to 35 feet.

A-residential classification enumerates as permitted uses, in addition to the single-family dwellings, municipal utilities and buildings, community centers, churches, schools, libraries, parks and recreation buildings, not-for-profit country clubs, railroad passenger stations and telephone exchanges. Plaintiff seeks a B-1 business classification which would permit the proposed use. The B-1 classification is cumulative, and would also permit all residential uses, including lodging and boarding houses, private clubs, restaurants, hotels, banks and similar retail businesses.

The surrounding property is uniformly zoned A-residential. The nearest deviation therefrom is found at the intersection of 103rd Street and Cicero Avenue, the latter being zoned for business use on both sides as it extends south from the intersection. A township dump area is located just north of the intersection with 106th Street, and a filling station just north of it. One Hundred Third Street is zoned B-1 for a distance of 600 feet eastward from Cicero Avenue, and a shopping center and bowling alley are located on the northeast corner of that intersection, while gasoline stations occupy the other corners. A funeral home presently occupies the south side of 103rd Street across from the shopping center. Other than these, no zoning other than A-residential exists within the one-mile segment of 103rd Street between Cicero Avenue on the west and Crawford Avenue on the east except at the intersection of Craw-

ford with 103rd where B-1 zoning extends one block westward to Komensky Avenue. The corners of the intersection with Crawford are vacant; to the north of the northeast corner is the Brother Rice School for Boys, and east of the northeast corner is St. Xavier's College with Mother McCauley's High School for Girls lying immediately north thereof. To the north of the northwest corner stands an apartment building fronting on Crawford, and south of the southwest corner is a shopping section. Eighty-four percent of the one-mile distance between Cicero and Crawford Avenues on 103rd Street is A-residentially zoned. The B-zoning exists at the extreme ends of this segment, while the subject tract lies near the middle.

One Hundred Third Street itself is a two-lane concrete street carrying approximately 11,000 vehicles per day. Outside of the B-1 use previously described there is no use or development on 103rd Street between Crawford and Cicero other than single-family dwellings with the exception of one lawfully nonconforming use 4½ blocks east of the tract in question; this nonconforming use consists of a single-family residence in which a real-estate office is located. There is a 1½-story single-family dwelling located ½ block south of the southeast corner of the subject property on Kilbourn Avenue, with steps leading to the entrance five feet above grade and two connected oil tanks on the exterior of the building. While this could presumably be used as a two-family dwelling, there is no testimony that it is so occupied.

Directly across 103rd Street from the subject property is a new single-family residential subdivision covering some 30 acres developed since 1959: the sides of these homes front on 103rd Street. There is a fairly substantial single-family subdivision with a church ⅛ mile southeast of the ·subject tract, and to the southwest is a small single-family residence subdivision although the area is predominantly open with scattered older homes. One fourth mile north lies a new single-family subdivision, and just west of the

B-I area at 103rd and Cicero is a fairly large and relatively new single-family residential development.

While some of the streets surrounding the area in question are unpaved, sanitary sewers and water are readily available. Some new one-family residential construction is under way ½ block east of the tract in question, and plaintiff intends to construct single-family residences on the south side of the alley abutting the south boundary of the subject area. M. F. Rupp, a professional municipal planner and developer testified for the defendant that the volume of traffic on 103rd Street was insufficient to prohibit single-family development, and that the highest and best use of the property was for this purpose. B. M. Lake, a real-estate broker and builder, also testified that single-family residential development constituted the highest and best use. Both of these witnesses stated the use sought would materially change the general characteristics of the area which is presently single-family residential use; W. L. Schlieske, a real-estate broker, and M. E. Baughman, a city planning and zoning consultant, both testified for plaintiff that the subject property is most adaptable to apartment use, and that such use is the highest and best.

The subject tract as presently zoned was purchased in 1958; the record does not disclose the purchase price, and the only evidence relating to value lies in the testimony of plaintiff's witness Schlieske, who valued the property at $80 per front foot as zoned and at $125 per front foot if zoned for apartment use.

We believe no useful purpose will be here served by re-iterating the oft-stated factors determinative of the validity of zoning ordinances. They are set forth with supporting authorities in *La Salle Nat. Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40, 46. Of paramount importance is the question as to whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. (*River Forest State Bank*

*and Trust Co.* v. *Village of Maywood,* 23 Ill.2d 560, 563; *Wehrmeister* v. *County of Du Page,* 10 Ill.2d 604, 608-9). It is fundamental that a presumption of validity surrounds the ordinance and, as we said in *Exchange National Bank of Chicago* v. *County of Cook,* 25 Ill.2d 434, 440; "Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citing cases.] Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. [Citing cases]."

The plaintiff purchased the lots in question fully aware of their restricted zoning. While this fact does not preclude challenging the restriction, the fact must necessarily be considered in the proceedings. *Vedovell* v. *City of Northlake,* 22 Ill.2d 611, 614.

This case presents a factual situation in which plaintiff has purchased residentially zoned land near the center of an area with no nearby zoning other than single-family residential. It has been gradually developing for this purpose, and there were single-family residences under construction within less than a block of the subject tract at the time of the hearings below. The plaintiff acknowledges his intention to develop the area immediately south of the property in question with one-family homes. It is clearly apparent and virtually conceded by one of plaintiff's witnesses that the predominant characteristic of the neighborhood is its single-family residential development, and we regard the commercial area and "town dump" on Cicero Avenue as too re-

mote to affect the area in question. The witnesses differ in their opinion as to the effect of a B-1 use of the premises, plaintiff's witnesses testifying that no depreciatory effect upon surrounding property would result, and defendant's witnesses stating values of both developed and undeveloped properties would suffer. Because his property would be worth, when zoned for business, approximately 50% more than under its present zoning, plaintiff contends he has suffered a substantial loss. Such valuation increases under a more intensive use are typical of zoning cases, and it is significant, we believe, that the record does not indicate the price paid for the tract, nor is it claimed that the property cannot be profitably developed on a one-family-dwelling basis.

Plaintiff urges that the findings of the trial court cannot be disturbed unless contrary to the manifest weight of the evidence. We agree that this is the rule. It is, however, clear to us that the evidence, when viewed most favorably to plaintiff, falls far short of overcoming the presumptive validity of the ordinance. At best, it accommodates a legitimate difference of opinion as to the reasonableness of the ordinance, and, under such circumstances, the legislative judgment must prevail.

The judgment of the circuit court of Cook County is therefore reversed.

*Judgment reversed.*