MARY BEAVER, Plaintiff-Appellee, *v.* THE VILLAGE OF BOLINGBROOK, Defendant-Appellant.

(No. 72-188;

Third District—June 29, 1973.

*Rehearing denied July 27, 1973.*

STOUDER, J., dissenting.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, (R. Marlin Smith, of counsel,) for appellant.

Murphy, Timm, Lennon & Spesia, of Joliet, and Saxon and Niznik, of Plainfield, (Ralph C. Murphy, of counsel,) for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Will County, Illinois, which held the zoning ordinance of the Village of Bolingbrook to be invalid as to certain property of the plaintiff, and which enjoined the Village from interfering with use of the property for a neighborhood shopping center and an automobile service station.

The plaintiff, Mary Beaver, the owner of 80 acres of land adjacent to the intersection of Illinois Route 53 and Briarcliff Road in Will County, had entered into an agreement with Yale Development Company for the sale to it of 10 acres of her land at the northeast corner of the intersection. The agreement was conditioned upon rezoning to permit the construction and operation of a neighborhood shopping center and an automobile service station at the intersection. Of the 10 acres subject to the agreement, 7½ acres, constituting the tract of land involved in this litigation, lay within the Village of Bolingbrook. Under the zoning ordinance of the Village this tract of land had an R-2 Single-Family Residential classification, which did not permit the use of land for a shopping center or a service station.

The plaintiff and Yale Development Company requested the Village to rezone her 7½-acre tract of land so as to permit the development contemplated. Their request was denied by the Village upon the recommendation of its plan commission. Thereafter this suit was filed to challenge the validity of the Village's zoning ordinance as it applied to the plaintiff's land to prohibit the intended uses. A hearing on the merits took place before the circuit court, findings were made and judgment entered for the plaintiff, and the Village has taken this appeal.

From the evidence it appears that Illinois Route 53 is a major north-and-south highway, with an average daily traffic volume of 10,285 in the vicinity of the plaintiff's property, and Briarcliff Road is the main east-and-west thoroughfare in the Village of Bolingbrook. Land to the west and southwest of the intersection is zoned and substantially developed as residential property. Additional residential development lies a short distance northeast of the intersection. Immediately north and east of the plaintiff's 7½-acre corner tract is the remainder of her 80 acres of

land, all devoted to farming and all zoned for farming except the southerly portion lying within the Village and zoned residential. A short distance east of the intersection, on the south side of Briarcliff Road, is an elementary school.

It appears, further, that Interstate 55 lies less than a mile south of the intersection of Route 53 and Briarcliff Road, and a cluster of commercial uses is found at the intersection of Route 53 and I-55. Other clusters of commercial uses are located on Route 53 at intersections north of Briarcliff Road. Between these intersections there are various housing developments and occasional commercial enterprises and areas zoned commercial. There is conflict in the testimony as to whether Route 53 in the Bolingbrook planning area is primarily commercial, whether it should be considered residential near Briarcliff Road, and what the trend of development is along Route 53.

There is conflict in the testimony, also, as to whether the plaintiff's 7½-acre tract at the intersection of Route 53 and Briarcliff Road is suitable for residential use; whether a detrimental effect on other property might result from allowing commercial uses to be introduced on this site; whether there might rather be an off-setting benefit to the community from the introduction of a neighborhood convenience shopping center and an automobile service station at this intersection; whether the two highways and the remainder of the plaintiff's property would be adequate as buffers on all sides of the 7½-acre tract; whether the proposed commercial development would create traffic problems; and whether any loss of property value which might ensue would be caused only to the adjacent land owned by the plaintiff herself.

It is clear that substantial detriment is caused the plaintiff by the present zoning of her property. The price she would receive from Yale Development Company, if commercial uses should become allowable, is $230,000 for 10 acres, or $172,500 for the 7½-acre tract involved in this litigation. Two of her witnesses would place a valuation of $400,000 on the 7½-acre tract as commercial property in the absence of a contract with Yale Development Company providing for a lower figure. The value of the 7½-acre tract as presently zoned for residential use is $37,500 to $50,000 according to the plaintiff's expert witnesses and $52,500 to $60,000 according to the witness testifying for the Village. It is thus established that the loss which present zoning restrictions would place on the plaintiff is between $112,500 and $135,000 for the 7½ acres.

We have considered, in our review of the record, the various factors which have been said to merit consideration. (See *La Salle Nat. Bank v. County of Cook*, 12 Ill.2d 40, 46-47; *Lakeland Bluff, Inc., v. County of*

*Will,* 114 Ill.App.2d 267, 275-76.) We have thereby sought to assess whether the challenged ordinance imposes a much more serious burden on the plaintiff than the public benefit seems to warrant, in which case the ordinance must be held unreasonable and void as applied to the plaintiff's property. (*Tillitson v. City of Urbana,* 29 Ill.2d 22, 27.) It is our conclusion that, as the Illinois Supreme Court has stated in another case involving a proposed automobile service station, "the hardship to the plaintiff is plain and uncontradicted, while the gain or hardship to nearby property owners is uncertain and minimal and presents little justification for the extreme confiscation of value worked upon the plaintiff's land by the residential classification." (*Chicago Title & Trust Co. v. Village of Wilmette,* 27 Ill.2d 116, 126.) We believe that the findings of the circuit court on the character of Route 53 and other factual matters in dispute are not contrary to the manifest weight of the evidence and so should not be disturbed. (*Locker v. City of McHenry,* 89 Ill.App.2d 457, 462.) We therefore concur with the decision of the circuit court that the residential classification of the plaintiff's property is unreasonable and void and that the proposed uses of her property are reasonable and are to be allowed. Pending motions asking that we consider certain recent changes in the vicinity of the plaintiff's property are denied, and the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER dissenting:

It is my opinion plaintiff failed to overcome the presumption of validity of the Village's zoning ordinance. It is well settled the plaintiff's burden in overcoming this presumption is to show by clear and convincing evidence the zoning restrictions on plaintiff's property are arbitrary and unreasonable and bear no substantial relationship to public health, safety, morals and welfare. *Bennett v. City of Chicago,* 24 Ill.2d 270, 181 N.E.2d 96.

Some of the factors to be considered in determining validity of a zoning ordinance are set forth in *La Salle National Bank v. County of Cook,* 12 Ill.2d 40, 145 N.E.2d 65, where it is said no one factor is controlling. This court has recently considered these factors in another zoning case, *Glassey v. County of Tazewell,* 11 Ill.App.3d 1087, and the reasoning employed therein seems to require a contrary result in this case.

Zoning classifications and uses of nearby property are a factor of

paramount importance. (*Ryan v. County of Du Page*, 28 Ill.2d 196, 190 N.E.2d 737; *Kellett v. County of Du Page*, 89 Ill.App.2d 437, 231 N.E.2d 706.) The evidence in this case clearly indicates the property surrounding the property in question is zoned primarily for residential use except for the remainder of plaintiff's land which is zoned for farming. Residential areas, however, surround most of this piece of farmland. Each of the other three corners of the intersection where the property is located is zoned for residential use and single family dwellings are built on two of these corners. The commercially zoned areas a mile to the north at Oldfield Road and a mile to the south at I-55 are too remote to give the intersection where the property in question is located a commercial character. Between these two clusters there is only one commercial use, a building with a barber shop and beauty parlor, and several temporary model home sales offices. Even some of plaintiff's own witnesses testified the intersection does not have a commercial character.

Another factor considered of importance is the suitability of the subject property for the zoned purposes. Plaintiff in her brief suggests the heavy traffic on Route 53 makes the property unsuitable for residential purposes. Illinois courts have taken the position that location of property on a heavily travelled street does not render invalid a single family zoning classification. (*Duryea v. City of Rolling Meadows*, 119 Ill.App.2d 445, 256 N.E.2d 32; *Kellett v. County of Du Page*, 89 Ill.App.2d 437, 231 N.E.2d 706; and *River Forest State Bank and Trust Company v. Village of Maywood*, 23 Ill.2d 560, 179 N.E.2d 671.) In *La Salle National Bank v. Village of Palatine*, 92 Ill.App.2d 327, 236 N.E.2d 1, the court said even property on a highway with heavy traffic could be properly zoned residential if the surrounding neighborhood was primarily residential in character.

Since the Village of Bolingbrook, which was incorporated in 1965, adopted the zoning ordinance in question in 1968, there is no indication of any rezoning in the area surrounding plaintiff's property. Thus, there has been no change of character in the neighborhood which would affect the suitability of the land for residential use. It was pointed out in the briefs, there are four to six new single family subdivision developments along Route 53, which indicate the residential activity in the area is increasing. The value of the 7½ acre tract zoned for residential use is within the range of $37,000 to $60,000 according to the testimony of the various witnesses. Such a substantial value for undeveloped land is a recognition of its suitability for residential use. Also there was a Comprehensive Planning Program undertaken by the Village in 1968 which recommended commercial uses not be permitted to spread

along Route 53 in order to preserve the residential character. Although the plan was not officially adopted until after the trial in this case, the Plan Commission had recommended its adoption to the Village Board.

The subdivision regulations prohibit homes from facing on Route 53. In other words residences and residential subdivisions are to be so oriented that individual residences will not have direct access to Route 53, which orientation has the effect of promoting and enhancing the traffic flow along Route 53 unhampered by numerous access points. While plaintiff contends this is an indication the subject property is unsuitable for residential use, it would appear the reason for the regulation is to prevent traffic congestion which individual entrances onto the roadway would cause, thus insuring an even flow of traffic. There is ample evidence to infer the subject property is suited for residential purposes.

Plaintiff also suggests the Village has a need for additional commercial facilities based on a social economic report, however, there is a failure to show why such need would require this particular property to be used for a commercial purpose rather than property already zoned and available for such purpose. Also, the report relied upon by the plaintiff was made in 1969 and since that time there have been additional shopping centers and gas stations built in the Village.

It is also particularly important to note how a change to a commercial use would affect the surrounding area. While plaintiff claims there will be only a minimal increase in traffic, other testimony shows and it appears evident the use of the property for a shopping center and gas station would substantially increase traffic and cause congestion. The attendant noise, light and odors would have an adverse effect on the surrounding residential area and would be likely to cause a decrease in value of the residential property in the area.

Plaintiff's evidence shows under a commercial zoning classification the property would have greater value, and hardship to plaintiff as an individual property owner is great especially as compared to the gain to the public if zoning remains residential. The majority seems to base its decision on this factor without discussing any other factors. In the cases cited by the majority as authority for the hardship factor (*Chicago Title and Trust Company v. Village of Wilmette*, 27 Ill.2d 116, 188 N.E.2d 33; *Tillitson v. City of Urbana*, 29 Ill.2d 22, 193 N.E.2d 1), there were also other factors weighing in favor of rezoning. In *Chicago Title and Trust Company v. Village of Wilmette*, there were already extensive commercial uses at two corners of the same intersection and in *Tillitson v. City of Urbana*, the immediate area was interspersed with commercial uses, most of these having been rezoned for such purposes and also the

land at the northwest cornor of the intersection immediately across from the subject property was rezoned to a business classification three years before the rezoning of the subject property was sought.

It is apparent that probably the highest and best use of the property in this case is not single family residential. The Illinois courts have frequently pointed out, property might be more valuable if a more intense use were permitted but further state this is usually true where zoning ordinances restrict private property. This fact, however, is not sufficient to invalidate an existing zoning ordinance. *Kellett v. County of Du Page,* 89 Ill.App.2d 437, 231 N.E.2d 706; *Ryan v. County of Du Page,* 28 Ill.2d 196, 190 N.E.2d 737; and *River Forest State Bank and Trust Company v. Village of Maywood,* 23 Ill.2d 560, 179 N.E.2d 671.

After considering the various factors relevant to determining validity of a zoning ordinance, I am of the opinion the presumption of validity has not been overcome by plaintiff. There is no clear and convincing evidence of arbitrariness or unreasonableness in the present zoning ordinance as applied to plaintiff's property. At best plaintiff's evidence only presents a conflicting opinion as to reasonableness of the zoning ordinance in which case the court is to determine whether the differences in opinion are reasonable and justifiable. (*Fiore v. City of Highland Park,* 76 Ill.App.2d 62, 221 N.E.2d 323.) If the conflicting opinions are reasonable and justifiable, the question should not be resolved by this court, rather the legislative judgment of the municipality must prevail. *Standard State Bank v. Village of Oak Lawn,* 29 Ill.2d 465, 194 N.E.2d 201; *Exchange National Bank of Chicago v. Cook County,* 25 Ill.2d 434, 185 N.E.2d 250; and *La Salle National Bank v. City of Chicago,* 6 Ill.2d 22, 126 N.E.2d 643.